Aleta Kaye VOLK, Plaintiff
and Appellant,

v.

Pius VOLK, Defendant and Appellee.

Civ. No. 10896.

Supreme Court of North Dakota.

Oct. 28, 1985.

---

Robert V. Bolinske, argued, of Zuger & Bucklin, Bismarck, for plaintiff and appellant.

Daniel J. Chapman, argued, of Chapman & Chapman, Bismarck, for defendant and appellee.

GIERKE, Justice.

Aleta Kaye Volk appeals from a judgment of divorce primarily on the ground that the district court made an inequitable property distribution. We remand that portion of the judgment concerned with property distribution to the trial court for further proceedings.

Aleta and Pius Volk were married on June 16, 1956. Twin daughters were born of this marriage in January 1958. At the time of trial, Aleta was forty-eight years old and Pius was fifty-three.

Aleta graduated from high school and attended one year of business college at Wahpeton School of Science. She worked outside the home for all but two years of their married life.[1] Since 1978, she has worked as the administrative secretary for the Governor's Council on Human Resources. Her take-home salary is approximately $950 per month. Aleta is in good health.

Pius completed eleven years of formal education, which included one year of high school and two years at Wahpeton School of Science. Pius has worked throughout his married life and is presently a shift supervisor for Montana Dakota Utilities Company, with a take-home salary of approximately $1,480 per month. Pius is also receiving disability compensation of $570 per month for wounds he sustained in the Korean Conflict. Pius has no medical problems which interfere with the performance of his duties at the utilities company.

During their married life the parties accumulated substantial marital property. The trial court found the net value of the marital assets to be $834,817.00. Aleta was awarded $199,757.68 in property and cash, as well as $1,000 per month for ten years. The trial court determined the present value of this $1,000 per month award to be $58,453.20. The remainder of the property was awarded to Pius.

### I.

Aleta appeals to this court on the ground that the trial court made an inequitable property distribution.

---

1. During the two years in which Aleta was not employed outside the home she was caring for newly-born twin daughters and occasionally assisting Pius in his numerous business endeavors.

█ The law as to property distribution in a divorce action is governed by § 14–05–24 of the North Dakota Century Code, which requires that the trial court make an equitable property distribution of the real and personal property of the parties. A determination of what constitutes an equitable distribution lies within the discretion of the trial court and will be dependent upon the facts and circumstances of each case. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979). Appellate review is governed by Rule 52(a), N.D.R.Civ.P.

█ There is no requirement that the property distribution in a divorce case be equal in order to be equitable. *Williams v. Williams*, 302 N.W.2d 754, 757 (N.D.1981). However, a particular case may present circumstances wherein an equal division of the marital property may be proper. *Hultberg v. Hultberg*, 259 N.W.2d 41, 44 (N.D. 1977), 281 N.W.2d 569 (N.D.1979).

█ In arriving at an equitable property distribution in a divorce case, the trial court should be guided by the factors of the *Ruff-Fischer* guidelines.[2] In applying the *Ruff-Fischer* guidelines to this case, most of the guidelines would seem to favor neither party. In the present case there is no great difference in the ages of the parties, their earning abilities, their station in life, the circumstances and necessities of each, their health and physical condition or their financial circumstances. It is undisputed that neither party brought any significant property into the marriage and that neither has inherited any of the property which they now own. While it is true that Pius has received $570 per month disability compensation since the Korean Conflict, there is no indication in the findings of fact that this was a factor in the trial court's decision. The marriage is one of long duration, *i.e.*, twenty-eight years. It appears that the trial court's rationale is based primarily on the conduct of the parties during the marriage in that it found "nearly all of the property acquired during the marriage came as a result of Pius's work effort".

This rather general finding combined with the evidence in the record of Aleta's contributions both at home and outside of the home lead us to the conclusion that the findings of fact submitted for our review do not support the disparity in the respective property awards in this case. The trial court is directed to either make more specific findings of fact in order to justify this disparity or reexamine the distribution as originally made.

## II.

Aleta further contends that the failure of the trial court to specify whether the $1,000 per month is alimony or part of the property distribution constitutes reversible error. The introductory words of the particular finding of fact at issue read as follows:

## VII.

"That the court finds, based upon the evidence in this case and the application of the *Ruff-Fischer* guidelines, that an equitable distribution of the property would be to give to the Plaintiff the following items:"

A review of the record shows that the trial court determined the $1,000 per month to be a part of the property distribution.

The judgment of the trial court is affirmed with respect to the decree of divorce. The portion of the judgment concerned with property distribution is remanded for further proceedings consistent

2. These guidelines provide that in making an award pursuant to § 14–05–24, N.D.C.C., the court may consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Williams v. Williams*, 302 N.W.2d 754, 757 (N.D. 1981).

with this opinion. Aleta is awarded costs on appeal.

ERICKSTAD, C.J., MESCHKE, J., and PEDERSON, Surrogate Judge *, concur.

LEVINE, Justice (concurring and dissenting).

I concur in part II of the majority opinion and also with the conclusion in part I that the trial court's findings of fact do not support the disparity in the property awards. I believe the trial court's findings relating to conduct are clearly erroneous and so I dissent from the majority's conclusion that tenders to the trial court the opportunity to make more specific findings to justify the disparity. The facts and law of this case provide no such justification and the trial court should be instructed only to redistribute the property.

In a traditional marriage the wife performed child care, home care and husband care. Within the last decade we have seen a dramatic change in our society. In 1984 approximately 30% of married working women had families with children under eighteen years. Statistical Abstract of the United States, pp. 390–399 (105 ed. 1985). While a husband and wife may often themselves decide that the "working wife" bear the brunt of the responsibilities of managing home and children, thereby in fact fulfilling two jobs, home and work, the law should not and indeed does not impose any such duties on either working spouse. Yet, the trial court found that Pius did an unusual amount of cooking. This finding clearly attributes fault to Aleta presumably for not doing all of the cooking. While that finding may have had some logic in the context of a traditional home setting, it has no relevance in a situation where each parent has employment outside of the home. There is no such thing as a "traditional working wife" in our case law or statutes.

The trial court's finding that "nearly all of the property acquired during the marriage came as a result of Pius' work ef-

fort" is likewise clearly erroneous. It is clear that in the enterprise of marriage a traditional homemaker's contributions arising from child care and home care constitute a valuable contribution. *Briese v. Briese*, 325 N.W.2d 245, 247 (N.D.1982); *Haugeberg v. Haugeberg*, 258 N.W.2d 657, 667 (N.D.1977) (Vogel, J., dissenting). *See generally* O'Kelly, *Three Concepts of Alimony in North Dakota Law*, 1 N.D. Faculty J. 69, 79 (1982). Here, Aleta not only cared for home and children, she also held a fulltime job outside the home for twenty-six years out of this twenty-eight year marriage. Whether her earnings were used for family purposes or her exclusive use, they necessarily constituted a contribution in that they supplemented Pius' earnings and made available more funds for property acquisition. If a non-wage-earning homemaker's contribution is substantial, it follows a *fortiori*, that a wage-earning homemaker's contributions are substantial. Yet the trial court noted only that Pius held down more than one job throughout most of the marriage. It overlooks entirely that the same was true for Aleta. The only difference between their respective extra jobs was Pius' remuneration for his.

I would instruct the trial court to divide the property equally since a proper application of the *Ruff-Fischer* guidelines justifies no disparate treatment or property division. While there is no requirement that a property division be equal to be equitable, when there is substantial property, as there is in this case, and when the *Ruff-Fischer* guidelines indicate no reason for unequal division, it is clearly erroneous to divide the property as the trial court did in this case.

---

* PEDERSON, Surrogate Judge, sitting in place of

VANDE WALLE, J., disqualified.